**EXHIBIT 2**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**ROBERT F. CULBERTSON, III,**          CIVIL DIVISION

    **Plaintiff,**                               GD No. _____

vs.

**HYLIION, INC.,**

    **Defendant.**                            **COMPLAINT**

Code _____
Filed on Behalf of Plaintiff,
Robert F. Culbertson, III

Counsel of Record for this Party:

David B. Spear
Pa. I.D. No. 62133

Nick Kennedy
Pa. I.D. No. 317386

MINTO LAW GROUP, LLC
603 Stanwix Street, Suite 2025
Pittsburgh, PA 15222
(412) 201-5525
Email: dspear@mintolaw.com

To the within Defendant,

You are hereby notified to plead to the enclosed Complaint within twenty (20) days from the date of service hereof or a judgment may be entered against you.

_____
David B. Spear
Attorney for Plaintiff

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**ROBERT F. CULBERTSON, III,**  CIVIL DIVISION

    **Plaintiff,**  GD No. _____

  vs.

**HYLIION, INC.,**

    **Defendant.**

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

> Lawyer Referral Service
> Allegheny County Bar Association
> 11th Floor Koppers Building
> 436 Seventh Avenue
> Pittsburgh, PA 15219
> Telephone: (412) 261-5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

**ROBERT F. CULBERTSON, III,**  CIVIL DIVISION

    **Plaintiff,**  GD No. _____

vs.

**HYLIION, INC.,**

    **Defendant.**

## COMPLAINT

1. Plaintiff, Robert F. ("R.F.") Culbertson, III, is an adult male who resides at 17 Churchill Road, Pittsburgh, PA 15235. At the time of the incidents complained of in this Complaint and presently, he was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

2. Defendant, Hyliion, Inc., is a Delaware corporation that creates hybrid technology for tractor trailer vehicles, which had its business headquarters located at 1967 Eastern Avenue, Pittsburgh, PA 15147. Defendant maintained its headquarters in Allegheny County, PA during the time period that the events detailed below took place.

3. Defendant recently relocated to 11801 Stonehollow Drive, Suite 125, Austin, TX 78758.

4. Culbertson, currently age 66, was born on November 27, 1951.

5. Culbertson was an Assistant Professor of Entrepreneurship at Carnegie Mellon University for 17 years and is also an alumnus of that institution. He holds a bachelor's degree in mechanical engineering, a master's degree in industrial administration, and a master's degree in process engineering – all from Carnegie Mellon University.

1

6. In March of 2015, Defendant's founders, Thomas Healy (current age approximately 25) and Mario Avila (current age approximately 30), were in the beginning stages of developing hybrid technology for use on the trailer of a tractor trailer vehicle.

7. Culbertson, Healy's former Entrepreneurship professor at Carnegie Mellon University, was hired by Defendant in March of 2015 to serve as an Advisor to Defendant. Culbertson's role was to assist in obtaining funding for the company to support Defendant's technological innovations and building Defendant into a profitable business.

8. When he started with Defendant, Culbertson resigned his position from RKNC Investments and stopped responding to solicitations for other University entrepreneurship teaching positions so as to devote his full attention to Defendant.

9. From March 2015 through January 2016, Culbertson's Advisor role with Defendant steadily grew in scope. By January 2016, with Culbertson's assistance, Defendant had raised approximately $3.5 million in capital.

10. During that time period, Culbertson logged approximately 2,690 hours advising Defendant. From the start, there were discussions regarding how to compensate Culbertson for his time. After Defendant won the Rice Business Plan Competition, Culbertson had a conversation with Healy and his family, who also assisted in the early development of Defendant, about payment for his services. Culbertson quoted to them that he would normally charge $5,000/day for his advising work. When Culbertson had subsequent conversations with Healy about being paid for his time, his payment requests were consistently met with assurances that payment was forthcoming in either dollars, stock, or both.

11. Culbertson's wife, Pamela, age 59, also worked for Defendant as Office Manager beginning December 10, 2015.

12. Defendant incorporated on January 26, 2016, with Healy serving as its CEO.

13. As of February 24, 2016, both Culbertson and Pamela, Defendant's oldest employees, had not received a single paycheck.

14. Finally, on February 24, 2016, Culbertson informed Defendant that he was not returning to work until Defendant paid him and his wife.

15. In response, Healy requested a meeting with Culbertson on February 26, 2016 at the Monroeville location of Panera Bread. At the meeting, when Culbertson again requested payment, Healy said "because of your age, you definitely don't need the money." Culbertson responded that his age had nothing to do with it, and to run a successful business an owner has to pay the employees. Healy then asked if he agreed to pay, would Culbertson return to work? Culbertson answered yes.

16. At the end of February 2016, Healy and Culbertson agreed that Culbertson would continue in his role as an Advisor but moving forward would be paid a salary of $72,000/year. Culbertson's salary increased to $96,000 in July 2016. Additionally, Healy personally assured Culbertson that the past wages owed would be made up in the future with stock.

17. Defendant also began paying Pamela her $28,000 annual salary.

18. Culbertson did receive 750,000 stock *options* from Defendant in July of 2016, but that was not the stock he was promised. Healy reluctantly awarded these stock options only after Culbertson and a number of staff members became vocal about the issuance of stock.

19. By the time Culbertson received his first paycheck from Defendant (March 1, 2016), he was the last of Defendant's employees to be paid, even though he was the first person beside the founders to work for Defendant.

3

20. After Culbertson returned to work in late February 2016, he diligently continued in his efforts to market and grow Defendant's business.

19. An important part of Defendant's business was providing live demonstrations of its technology to investors, potential clients, and media outlets. During these demonstrations, Healy repeatedly highlighted how Defendant's technology could be installed in 26 minutes, "unless R.F.'s involved. His getting in and out of his wheelchair slows us down," or "unless R.F. needs a nap." The phrasing and the point at which Healy referred to Culbertson in these live demonstrations varied, but the message was always the same: Culbertson's abilities were deficient due to his age. Healy conveyed this message to representatives from the following entities (non-exhaustive list): Goodyear Tire and Rubber, Borg Warner/Remy Motors, Dana, Inc., HDT Magazine, and Ridewell Corporation.

20. Culbertson initially took these slights in stride, but the constant denigration that continued throughout his employment with Defendant wore on him.

21. Additionally, the comments were not restricted to Healy or the live demonstrations. On June 9, 2016, Ed Olkkola, the only member of Hyliion's Board of Directors other than Healy, pulled Culbertson aside for a private conversation. As a lead in to what followed, Olkkola said "Thomas and I are in agreement on the wording and decision that I am about to tell you." Olkkola then told Culbertson that his sales territory was being moved from domestic to international, because the U.S. is a "young man's game, while overseas they still respect their elders," and Culbertson could use his "hair color" to the company's advantage. Shocked, Culbertson responded that he would be successful overseas due to his education, credentials, and product understanding. Olkkola responded that Culbertson's "gray hair" and "elder status" would get him in the door.

4

22.     The transfer of Culbertson to an international sales territory marked a demotion for Culbertson, because Defendant was years away from developing a product for the international market.

23.     Despite the demotion, after months of preparatory work, Culbertson dutifully traveled to Europe for two weeks to scout locations for a European sales office, networked with potential partners, suppliers, and customers, and generated sales estimates and a business plan based upon those conversations.

24.     Right after returning from Europe, Culbertson traveled to Las Vegas with Healy and Defendant's entire staff in order to display their technology and meet with potential investors and suppliers.  They remained there for meetings from September 30 through October 4, 2016. During their meeting with Dana, Inc., a potential axle supplier for Defendant, Healy announced to the group upon Culbertson's arrival that "It looks like the old guy is here so we can start."

25.     Also, while in Las Vegas, Culbertson encountered John McVaney, whom Culbertson had previously interviewed on November 12, 2015 for an investment opportunity with Defendant. McVaney asked Culbertson, "Where's your next gig?" Culbertson replied that he assumed it was with Hyliion, where he remained employed. McVaney did not respond. Unknown to Culbertson, Defendant had hired McVaney on October 3, 2016.

26.     Following his trips to Europe and Las Vegas, Culbertson returned to the office on October 6, 2016. On that day, Culbertson approached Timothy Gehring, Defendant's Vice President of Finance at the time, and told Gehring that he would provide him with the European sales estimates and plan shortly. Gehring appeared shocked and informed Culbertson that he did not need any of those numbers. He added, "We are not going to show those numbers to the investors." At that moment, it became apparent to Culbertson that Defendant's transfer of his

5

territory was not simply a demotion, it was a wild goose chase. Defendant's unwillingness to consider the sales estimates indicated that it had no intention of doing business internationally.

27. On November 7, 2016, Culbertson saw that Defendant was hiring for a software engineering position. Being qualified and looking for another way to contribute to Defendant, Culbertson told a group of his colleagues that he was interested in taking on that role. Upon hearing Culbertson's statement, another employee responded, "You can't do that, we are looking for someone much younger because they will be riding around in a truck all day."

28. On November 14, 2016, Healy terminated Culbertson in a 20-minute meeting with Gehring present and provided no justification for this action.

29. Culbertson's termination cutoff his stock options from vesting.

30. Following Culbertson's termination, Defendant transferred his job duties to an individual or individuals significantly younger than him.

31. Defendant terminated Culbertson because of his age.

## COUNT I– VIOLATION OF PHRA – TERMINATION

32. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs.

33. Defendant terminated Culbertson because of his age, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et. seq.*

34. Defendant's decision to terminate Culbertson was induced by its intent to discriminate against Culbertson on the basis of his age, as evidenced by, among other things, the age-biased comments of Defendant's CEO and other employees and the treatment of Culbertson as described above.

35. As a result of Defendant's actions, Plaintiff has suffered wage loss, loss of reputation, pain and suffering, and loss of stock options, among other damages.

**WHEREFORE**, Mr. Culbertson requests judgment in favor of Plaintiff and against Defendant in an amount in excess of thirty-five thousand ($35,000.00) dollars, that includes back and front pay, stock options, compensatory damages, costs and attorneys' fees, damages associated with the increased tax burden of any award, pre-judgment and post-judgment interest, and such other relief as the Court deems just and appropriate.

Respectfully Submitted,

David B. Spear
Pa. I.D. No. 62133

Nick Kennedy
Pa. I.D. No. 317386

Attorneys for Plaintiff

MINTO LAW GROUP, LLC
603 Stanwix Street, Suite 2025
Pittsburgh, PA 15222
(412) 201-5525

## VERIFICATION

I, Robert F. Culbertson, III, make this verification and state that the averments of fact set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements therein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_____
Robert F. Culbertson, III

Date: 3/22/18

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Counsel for Plaintiff
Signature: *[signature]*
Name: David B. Spear
Attorney No. (if applicable): 62133

Rev. 09/2017